In the Matter of the Application of GENERAL REINSURANCE CORPORATION, Petitioner, for a Certiorari Order against GEORGE S. VAN SCHAICK, as Superintendent of Insurance of the State of New York, Respondent.

Third Department, January 11, 1935.

*Cabell, Ignatius, Lown & Blinken* [*Hartwell Cabell, Milton B. Ignatius, Harold J. Hinman* and *James M. Lown* of counsel], for the petitioner.

*John J. Bennett, Jr., Attorney-General,* and *Henry Epstein, Solicitor General* [*Robert N. Rose* of counsel], for the respondent.

RHODES, J. The petitioner herein is a domestic casualty and reinsurance corporation. All of its stock, with the exception of qualifying shares, is held by the General Alliance Corporation, which is also a domestic corporation.

In the language of the petitioner, the latter corporation " was created in 1928 for the purpose of affording the means whereby investors could have a joint interest in General Reinsurance Corporation and in a running mate which would participate in the writing of Casualty & Surety reinsurance in the United States, and conduct a general Fire & Casualty business in England and Canada under the Charter of the United British Insurance Co. Ltd."

The petitioner further states that " Upon May 17, 1932, General Alliance Corporation finding that its subsidiary, General Reinsurance Corporation, was in need of strengthening owing to decline in the value of its invested assets, contributed, in its capacity of sole stockholder (with the exception of Directors' qualifying shares) of General Reinsurance Corporation, the sum of $2,179,375.00 to the surplus of the latter company in the form of 7,925 shares of the capital stock of North Star Insurance Company, the same being all of the capital stock of North Star Insurance Company, except Directors' qualifying shares."

North Star Insurance Company is a domestic corporation conducting solely a fire reinsurance business. On June 20, 1934, the Superintendent of Insurance appointed a Department examiner to make an examination into the condition and affairs of the General Reinsurance Corporation. Such examination was a normal routine

inquiry in accordance with the provisions of section 39 of the Insurance Law. Said section provides that an examiner shall make a full and true verified report of every examination made by him; that the Superintendent shall grant a hearing to the company examined before filing any such report and that he may withhold such report from public inspection for such time as he may deem proper, and " may, if he deems it for the interest of the public to do so, publish any such report or the result of any such examination as contained therein, in one or more newspapers of the state. The Superintendent shall forward to the corporation, or other insurer, or organization, examined, a copy of such report as filed or a summary thereof, together with any recommendations or statements relating thereto as he may deem proper."

The examiner filed his report of such examination and called attention to the shares of the North Star Insurance Company held by the petitioner. In accordance with the formula stated in subdivision 4 of section 16 of the Insurance Law, the examiner computed the value of each share of the North Star Insurance Company as $286.95, making the value of such stock held by the petitioner $2,274,078.75. He reported his conclusion that the amount of said stock permitted to be held by the petitioner was the sum of $1,354,893.86; that the balance of said stock amounting to $919,184.89, was in excess of the amount which the Insurance Law permits petitioner to hold.

Before the filing of said report, petitioner applied for and was granted a hearing relative to its holding of said stock, the result of said hearing being that the Superintendent of Insurance has ruled in accordance with the report of the examiner to the effect that said excess holding by said petitioner of the amount of stock of the North Star Insurance Company in the sum of $919,184.89, is not permitted by law; that the same should be deducted from petitioner's admitted assets and has notified petitioner that " accordingly it becomes necessary for your company to immediately take steps to dispose of the insurance stock which it holds in excess of the amount permitted by the Insurance Law."

No question is raised as to the soundness of any of the corporations referred to.

The contention of the Superintendent of Insurance is that the holding of said stock by petitioner constitutes an investment within the meaning of the Insurance Law, while the petitioner asserts that it acquired said stock as a gift; that it invested none of its funds therein and hence it constitutes an asset but not an investment

Petitioner concedes that by the statute it is prohibited from investing its funds in the stock in question except to the limited amount determined by the Superintendent, and that if the excess of its holding of said stock represented assets purchased with the funds of petitioner, such excessive holding would be unlawful as an investment. The determination of the controversy involves an interpretation of subdivision 12 of section 16 of the Insurance Law. Its terms are as follows: " No funds of any insurance corporation organized under the laws of this state shall be *invested* in or loaned on the stock or security of any insurance corporation, either directly, indirectly, remotely or in any other manner whatsoever, excepting as specifically permitted herein. Every domestic corporation which *owns* any shares of stock or other securities other than those in which it is permitted to invest by the above provisions shall dispose of the same as soon thereafter as it can do so without suffering financial loss, but in any event not later than July first, nineteen hundred and thirty-five, or before the expiration of such further period or periods of time as may be fixed in writing for that purpose by the superintendent of insurance, but this shall not be deemed to further extend any such extension previously granted."

It is undisputed that petitioner acquired said stock as a gift. It does not represent an investment of its funds and, therefore, its acquisition by petitioner was lawful and should properly be included as among petitioner's assets.

The respondent, however, points to the second sentence of the subdivision which requires every domestic corporation which *owns* any shares of stock or other securities other than those in which it is permitted to invest, to dispose of the same.

We do not now determine whether this provision relates to all assets however acquired, or whether it relates only to assets in which the funds of the corporation have been invested. If it relates only to investments, then the statute does not apply to a situation such as this, and, therefore, petitioner is not obligated to dispose of the stock in question; if it relates to all assets, no matter how acquired, then the time has not yet elapsed within which it must dispose of the same.

If after the statutory period the Superintendent of Insurance shall claim the law has been violated, his then action and determination may properly be reviewable, but at the present time no violation has been shown; thus no facts are before us requiring a further interpretation of the statute.

We think it would be entirely proper for the Superintendent to include in or subjoin to his report any statement setting forth the facts as to petitioner's acquisition and holding of the stock

in question, but that his determination is premature in so far as it requires petitioner to take immediate steps to dispose of its excess holding of said stock and that it is too broad in so far as it holds that said stock may not be considered as an admitted asset.

The determination in so far as indicated herein should be annulled, with fifty dollars costs and disbursements to the petitioner.

HILL, P. J., CRAPSER, BLISS and HEFFERNAN, JJ., concur.

Determination in so far as indicated in the opinion annulled, with fifty dollars costs and disbursements to the petitioner.